The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor technical modifications. Neither party here requested that the Full Commission receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support the findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Plaintiffs alleged date of injury is 3 September 1997.
2. On that date, the parties were subject to, and bound by, the provisions of the North Carolina Workers Compensation Act.
3. On that date, an employer/employee relationship existed between the parties.
4. CNA Insurance Company was the compensation carrier on the risk.
5. Plaintiffs average weekly wage is to be determined.
In addition, the parties stipulated into evidence the following:
1. A packet of medical records and reports.
2. Defendants responses to plaintiffs first set of interrogatories with attachments.
The Pre-Trial Agreement dated July 23, 1998 is incorporated by reference.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff, who was thirty-four years old at the time of the hearing before the Deputy Commissioner, began working for defendant-employer as a temporary employee on 4 August 1997. She had previously worked there through an employment agency. The company assembled computers for IBM and she worked on the assembly line. Her job involved opening the back of a computer monitor, turning down the ICT, replacing the cover, and then sending the monitor down the conveyer line.
2. During the time plaintiff was working for defendant-employer, she repeatedly advised management and her coworkers that she would only be working there until October because she was a fashion designer and intended to have a fashion show sometime in November.
3. On 4 September 1997 plaintiff lifted a number of boxes containing computer monitors from a pallet and then lifted the monitors out of the boxes. Plaintiff began to experience groin pain at that time. However, plaintiff did not report the problem to her supervisor that day. On 5 September 1997, a Friday, plaintiffs back was bothering her in addition to the lower abdominal pain, so she reported her injury to her employer and was sent to Park Medical Center where she saw Dr. Lambertsen. Dr. Lambertsen found evidence of muscle spasm in plaintiffs low back on examination. Dr. Lambertsen treated plaintiff conservatively with medication, physical therapy, and work restrictions for what he diagnosed as a mechanical low back injury and muscular injury to the lower abdomen.
4. Plaintiff was provided with light-duty work that involved removing screws from monitors and writing down serial numbers. Plaintiff was able to perform those work duties without difficulty. Dr. Lambertsen kept plaintiff on light-duty when he saw her in follow-up on 10 and 17 September 1997. Plaintiffs condition improved during that time.
5. After her injury in September 1997, plaintiff approached Robert Leach, her supervisor, and asked if she could obtain a leave of absence to pursue her own business in fashion design. He advised her that temporary employees were not allowed to take leaves of absence, so she told him she would be terminating her employment as of 7 October 1997. He then sent her to the human resources manager, Jim Daggerhart. Plaintiff described the conversation she had with Mr. Leach to Mr. Daggerhart and again specified that 7 October 1997 would be her last day of work.
6. Plaintiff next saw Dr. Lambertsen on 1 October 1997 and reported that she had re-injured her back five days previously. Plaintiff was sitting outside on some bleachers at the workplace eating lunch when someone spotted a snake on the bleachers in her vicinity. Plaintiff scrambled to get off the bleachers and thought that she had hit some bleacher parts in the process. Plaintiffs primary symptoms at that time were in the thoracic area of her back but she indicated that she was aching all over. Dr. Lambertsen sent plaintiff back to physical therapy and continued her work restrictions. Dr. Lambertsen saw plaintiff a week later and she indicated that she had had a flare-up while walking in the mall. Plaintiffs symptoms were better but she still had some muscle spasms. Dr. Lambertsen continued to treat plaintiff with medication, physical therapy, and work restrictions.
7. By 1 October 1997, plaintiff had stopped working for defendant-employer in accordance with the alternate career plan she had previously related to the defendant-employer. The light-duty work plaintiff had been given was a regularly advertised, sedentary job and would have remained available for her if she had continued to work for defendant-employer.
8. On 14 October 1997 plaintiff returned to Dr. Lambertsen complaining of increased pain that she said was moving down her legs, so Dr. Lambertsen referred her to Dr. Sanitate for an evaluation. Dr. Sanitate examined her on 30 October 1997. Although plaintiff complained of severe pain, Dr. Lambertsen observed her to appear quite comfortable. Dr. Lambertsen diagnosed her condition as left sacral dysfunction with no evidence of radiculopathy. He administered some acupuncture, indicated that the physical therapy plaintiff had been receiving appeared appropriate, and referred her back to Dr. Lambertsen for further follow-up care.
9. Plaintiff next saw Dr. Lambertsen on November 3, 1997 and reported another dramatic increase in pain the previous Friday, which was the day after she had seen Dr. Sanitate. She had no specific areas of muscle spasm and appeared relatively comfortable, so her previous treatment was continued. However, plaintiff returned to Dr. Lambertsens office the next day after having been taken to the emergency room the day before with complaints of excruciating pain. Yet, when Dr. Lambertsen walked into the examining room, he found plaintiff asleep sitting in a rather awkward position. The doctor did not examine her but noted the inconsistencies between her reported pain and her actions as signs of symptom magnification. As far as Dr. Lambertsen was concerned, plaintiff had been referred to Dr. Sanitate and Dr. Sanitate was to provide any further treatment. Nevertheless, plaintiff returned to Dr. Lambertsen on 17 November 1997 and advised that she was seeing a chiropractor on her own.
10. Plaintiff also returned to Dr. Sanitate on 7 November 1997 and told him about her visit to the emergency room. An MRI of her lumbar spine had been performed at the hospital and was normal, as Dr. Sanitate expected. The doctor was of the opinion that plaintiffs symptoms were not due to any problem with her back and recommended that she follow-up with her gynecologist.
11. The next medical treatment plaintiff received was at Raleigh Rehabilitation. She underwent a program of physical therapy there under the supervision of Dr. Le, a general practitioner. During the time plaintiff was treated there, she complained of cervical, thoracic, and lumbar pain. In view of Dr. Les difficulties communicating in English and his failure to find signs of symptom magnification contrary to the findings in this decision, his opinions have been given little weight.
12. In January 1998 Dr. Le referred plaintiff to Dr. Dhillon, an orthopedic surgeon, for evaluation because she was continuing to complain of persistent symptoms despite the treatment she had received at Raleigh Rehabilitation. Dr. Dhillon examined plaintiff on 21 January 1998. His diagnosis was acute thoracolumbar sprain and he recommended heat, exercises, anti-inflammatory medication, a muscle relaxant, and a tranquilizer. Dr. Dhillon recommended that she be as active as possible. During his examination, Dr. Dhillon noted that plaintiff had a lipoma, which she described as a knot in her back. The fatty tumor was unrelated to her injury.
13. Defendant subsequently sent plaintiff to Dr. Edwards, another orthopedic surgeon, and he saw her on 30 March 1998. Plaintiff continued to complain of back pain and she also described episodes of numbness and weakness down her left side and, more recently, down her right side. On examination, plaintiff had no objective findings but Dr. Edwards diagnosed her with a lumbar strain based upon her subjective complaints. In view of her complaints of numbness, he recommended that a neurologist evaluate her. Accordingly, on 14 May 1998 plaintiff was examined by Dr. Perkins who was of the impression that her symptoms most likely represented musculoskeletal pain or some possible embellishment. Dr. Edwards then conducted an EMG and nerve conduction study that proved to be normal.
14. Dr. Perkinss findings were subsequently submitted to Dr. Edwards who concluded that plaintiffs complaints of numbness were not based upon objective findings and that she had reached maximum medical improvement with no permanent partial disability. In Dr. Edwards opinion, even based upon her subjective complaints, plaintiff had remained able to work with no lifting of greater than twenty pounds and with limitations on prolonged sitting and standing. However, objectively there were no findings to indicate that she would have any work restrictions. Dr. Edwards had no treatment recommendations regarding her injury, although he advised a psychological evaluation to determine if she had a mental problem apart from her injury.
15. On 4 September 1997 plaintiff sustained a specific traumatic incident of the work assigned. The fact that she lifted boxes of computer monitors and suffered the onset of pain constituted a specific traumatic incident of the work assigned. As a result of this incident, she sustained a lumbar strain.
16. Plaintiff was not able to perform her regular duties following the injury, but she was capable of performing light work and her employer provided work for her that was suitable to her capacity at wages equivalent to her previous earnings. However, after 7 October 1997 plaintiff voluntarily terminated her employment with defendant-employer to pursue another career. She could have continued to work in the light duty job provided by her employer.
17. To the extent that plaintiffs testimony varied from the foregoing findings of fact, the Deputy Commissioner did not find the testimony to be factual or credible. The Full Commission declines to reverse the Deputy Commissioners credibility determination.
18. In addition, plaintiffs allegation of disabling pain after she terminated her employment with defendant-employer is not accepted as credible. Plaintiff exaggerated her symptoms well out of proportion to her actual condition. Furthermore, plaintiff advised medical personnel that she was self-employed at that time. Throughout the time in question, plaintiff was at least capable of performing the light work defendant-employer provided for her.
19. The lipoma found by Dr. Dhillon and Dr. Edwards was not in any way related to plaintiffs injury at work.
20. Plaintiff did not injure her cervical spine as a result of her injury on 4 September 1997. The origin of the cervical spine complaints she made to Dr. Le was not revealed by the evidence.
21. Plaintiff reached maximum medical improvement with respect to her injury at work no later than 24 July 1998. She sustained no permanent partial disability as a result of the injury.
22. Following the hearing before the Deputy Commissioner, plaintiff moved that defendants be required to provide a psychological evaluation in view of Dr. Edwards recommendation. However, Dr. Edwards did not attribute any potential psychological problems which plaintiff might have to her injury, and there was no other evidence to support holding defendants responsible for such an evaluation.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 4 September 1997 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in that she sustained a back injury as the result of a specific traumatic incident of the work assigned. N.C. Gen Stat. 97-2 (6).
2. If an injured employee refuses employment procured for her that is suitable to her capacity, she is not entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the commission such refusal was justified. N.C. Gen. Stat. 97-32.
3. In that plaintiff remained capable of performing light work from 5 September 1997 through the date of hearing before the Deputy Commissioner, defendant provided suitable light work and she refused it without justification when she terminated her employment on 7 October 1997. N.C. Gen. Stat. 97-29; N.C. Gen. Stat. 97-30; N.C. Gen. Stat. 97-32; Anderson v. Northwestern Motor Company, 233 N.C. 372, 64 S.E.2d 265 (1951).
4. Having sustained no permanent partial impairment as a result of her injury at work, plaintiff is not entitled to compensation for such disability. N.C. Gen. Stat. 97-31.
5. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. Plaintiff is not entitled to have defendants provide treatment for unrelated conditions. N.C. Gen. Stat. 97-2(19); N.C. Gen. Stat. 97-25.
6. Plaintiff is not entitled to have defendants provide a psychological evaluation or for psychological care. N.C. Gen. Stat. 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiffs claim for indemnity compensation for her injury at work is DENIED.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, but excluding those arising from treatment for unrelated conditions.
3. Defendants shall pay the costs.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER